**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| | : | |
| **v.** | : | **CR. NO. 19-MJ-030** |
| | : | |
| **RYAN JASELSKIS,** | : | |
| **also known as "RYAN RIMAS"** | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRE-TRIAL DETENTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully moves this Court to order the pretrial detention of defendant, Ryan Jaselskis, pursuant to 18 U.S.C. § 3142 (f)(1)(A), and in support thereof, submits this memorandum providing an overview of the investigation which led to the February 15, 2018, indictment of the defendant for arson.   In support thereof, we submit as follows:

### Introduction

The defendant is a twenty-two year old male charged with one count of arson, in violation of 18 U.S.C. § 844(i).   On the evening of January 23, 2019, the defendant intentionally ignited a fire in the back bar area of Comet Ping Pong Restaurant, located in the 5000 block of Connecticut Avenue, N.W. Washington, D.C.   After lighting the blaze with lighter fluid and matches, the defendant left the scene.   At the time, the restaurant was occupied with patrons and staff.   The defendant should be held without bond pending trial to ensure the safety of the community.

### Procedural Background

The defendant was charged by complaint with arson on February 13, 2019.   That same

day, the defendant appeared before Magistrate Judge Harvey for his initial hearing.   At the initial

appearance, the government orally moved to have the defendant held without bond in this case

pursuant to Title 18, United States Code, Section 3142 (f)(1)(A).   In addition, the government

also notes that the defendant is subject to the rebuttable presumption of detention under Title 18,

United States Code, Sections 3142(e)(3)(B).   The defendant was held without bond pending his

detention hearing scheduled for Tuesday, February 19, 2019.   On February 15, 2019, the grand

jury returned a one-count indictment charging the defendant with arson, in violation of 18 U.S.C.

§ 844(i).

## Legal Authority

As a preliminary matter, the "rules concerning the admissibility of evidence in criminal

trials do not apply to the presentation and consideration of information at the [detention] hearing."

18 U.S.C. § 3142(f).   The parties may proceed by way of proffer and hearsay is permitted.   Id.;

United States v. Smith, 79 F.3d 1208, 1210 (D.C. Cir. 1996).   Moreover, the Government is not

required to "spell out in precise detail how the government will prove its case at trial, nor specify

exactly what sources it will use."   United States v. Martir, 782 F.2d 1141, 1145 (2d Cir. 1986);

United States v. Williams, 798 F.Supp. 34, 36 (D.D.C. 1992).   A pretrial detention hearing should

not be used as a discovery device and cross-examination should be limited to the disputed issues,

since the detention hearing is not to be turned into a mini-trial and is not to be used as a subterfuge

to obtain discovery.   Smith, 79 F.3d at 1210, see also Williams, 798 F. Supp. at 36.

Since the defendant has been indicted for a violation of Title 18, United States Code,

Section 844(i), the Court must presume, subject to rebuttal, that there is no condition or

combination of conditions that will reasonably assure the safety of the community.   18 U.S.C. §§

2

3142(e)(3)(B), 2332b; see also United States v. Mitchell, 23 F.3d 1 (1st Cir. 1994) (arson is a crime

of violence for purposes of the Bail Reform Act).   The indictment, standing alone, constitutes

probable cause that the person charged committed the offense and is "enough to raise the rebuttable

presumption that no condition would reasonably assure the safety of the community."   Smith,

supra, 79 F.3d at 1210; accord United States v. Williams, 811 F. Supp.2d 274, 276 n.2 and 277

(D.D.C. 2011) (citing Smith and United States v. Carter, 802 F. Supp.2d 180, 182 (D.D.C. 2011)).

When the rebuttable presumption of Title 18, United States Code, Section 3142(e) is triggered, it

operates "at a minimum to impose a burden of production on the defendant to offer some credible

evidence contrary to the statutory presumption."   United States v. Alatishe, 768 F.2d 364, 371

(D.C. Cir. 1985).   The "indictment returned by a duly constituted grand jury conclusively

establishes the existence of probable cause for the purpose of triggering the rebuttable

presumption."   United States v. Hubbard, 962 F.Supp.2d 212, 214-215 (D.C. 2013).

      The Bail Reform Act, Section 3142(e), which authorizes detention without bail pending

trial, provides:

> If, after a hearing pursuant to the provisions of subsection (f) of this
> section, the judicial officer finds that no condition or combination
> of conditions will reasonably assure the appearance of the person as
> required ***and the safety of any other person and the community***,
> such judicial officer ***shall order*** the detention of the person before
> trial.

18 U.S.C. § 3142(e) (emphasis added).   Factors that the Court must consider when

determining whether there are release conditions that will reasonably assure a defendant's

appearance as required and the safety of any person and the community are:   (1) the nature and

circumstances of the offense charged, including whether the offense is a crime of violence or

involves a narcotic drug, (2) the weight of the evidence against the person, (3) the history and

3

characteristics of the person, and (4) the nature and seriousness of the danger to any person or the

community that would be posed by the person's release.   18 U.S.C. § 3142(g).   A defendant must

be detained pending trial if the Court determines that no condition or combination of conditions

"will reasonably assure the appearance of the person as required and the safety of any other person

and the community . . . ."   18 U.S.C. § 3142(e).   A judicial determination that a defendant should

be detained pending trial on grounds of community safety must be supported by clear and

convincing evidence. 18 U.S.C. § 3142(f)(2)(B); see also United States v. Simpkins, 826 F.2d 94,

96 (D.C. Cir. 1987); Alatishe, supra, 768 F.2d at 370.

The defendant is charged by indictment with arson, in violation of 18 U.S.C. § 844(i); this

offense is enumerated in § 2332b(g)(5)(B) and carries a maximum penalty of up to twenty years,

and a five year minimum mandatory.   Accordingly, a rebuttable presumption is applicable here

that no condition or combination of conditions will assure the safety of the community. See §

3142(e)(3)(C).

### Nature and Circumstances of the Offenses Charged

On the evening of Wednesday, January 23, 2019, the defendant entered Comet Ping Pong,

a restaurant located at 5307 Connecticut Avenue NW, Washington, D.C., carrying a bag containing

lighter fluid.   As the defendant walked through the restaurant, he walked into a game room area,

passing at least six adults and two children who were playing ping-pong and foosball.   Adjoining

the game room was a back bar area that had a decorative curtain covering the back wall.   The

defendant doused the curtain with lighter fluid and attempted to ignite it.   When his initial attempt

to ignite the curtain failed, the defendant left the restaurant, returned a minute later, walking again

past the restaurant patrons and into the back bar area.   This time, the defendant's ignition was

successful.   The defendant set the curtains ablaze and, after watching the fire for a moment, he turned to leave.   However, he then noticed the surveillance camera on the wall, walked over to it, and punched it.   The defendant then departed, leaving the fire burning up the curtain towards the ceiling.   A restaurant patron (hereinafter Witness One) saw the fire and ran into the back bar area towards the fire.   Witness One grabbed the burning curtain and attempted to yank it off the wall. The flames were burning taller than Witness One, yet he continued to fight the fire bare-handed. Witness One was able to tear the curtain down and then stomped on it to try to get the fire out. Witness One ran to the bar, retrieved a pitcher of liquid and poured it on the fire.   Two kitchen workers came to Witness One's aid with a fire extinguisher and were finally able to extinguish the flames.

The events described above were all captured on surveillance camera - the defendant walking into the restaurant, walking past people in the game room, walking into the back bar area, exiting, and then returning and finally lighting the fire.   The defendant's attempt to disable the camera by punching it are also captured on video, as is Witness One's valiant battle to save the restaurant.

District of Columbia Fire and Rescue units responded to Comet Ping Pong and located, in the back bar area, the burnt curtain.   Fire investigators also noted scorched burn marks on the wooden panel of the wall near the ceiling where the curtain had been hanging.   Investigators also discovered a container of lighter fluid and a box of matches in the area of the origin of the fire.

The surveillance footage depicts the defendant entering the restaurant wearing a distinctive blue jacket with white sleeves and red trim and ripped jeans.   This portion of the video was disseminated in an effort to identify the defendant.

Less than two weeks later, on February 4, 2019, the United States Park Police ("USPP") arrested the defendant for jumping a security fence[1] set-up around the Washington Monument on the National Mall and subsequently fighting USPP officers (one officer was injured and bleeding as a result). The defendant was charged with Assault on a Police Officer and Unlawful Entry; he was later released and the court issued a "Stay Away Order" for the Washington Monument Grounds. The following day, on February 5, 2019, the defendant again jumped the security fence around the Washington Monument and, this time, broke into the Monument.   USPP again arrested him and the defendant was additionally charged with Unlawful Entry, Destruction of Public Property, and Contempt.   During both arrests, the defendant was wearing the distinctive blue jacket, with white sleeves and red trim that he is seen wearing on the surveillance video from Comet Ping Pong.   Based on the jacket, the fire investigators were notified.   A photo spread was created and a restaurant patron - one of the individuals who the defendant walked past in the game room area – picked the defendant out and positively identified him as the arsonist.

Finally, investigators determined that the defendant is the registered owner a 2007 Toyota Matrix bearing a California license plate.[2]   After the fire was ignited, the defendant is seen on MPD-owned camera leaving the Comet Ping Pong and walking across Connecticut Avenue; approximately two minutes later, a D.C. Department of Transportation camera captures a Toyota Matrix leaving the area.   On the day of the offense, January 23, 2019, approximately four hours prior to the fire, a D.C. License Plate Reader captured the defendant's license plate in the Northwest section of the city.   Additionally, a speed enforcement camera captured the defendant's

---

[1] The Washington Monument is undergoing construction renovations and is closed to the public at this time.
[2] The exact license plate number is known to law enforcement and can be provided to the Court and defense counsel, however it is not being included in this public filing.

license plate in Northwest on the same day.   On February 5, 2019, February 6, 2019, and February

7, 2019, the Toyota Matrix bearing the defendant's license plate received parking tickets in the

1200 block of Constitution Avenue Northwest, which is in the proximity of the Washington

Monument where the defendant was arrested.

### Weight of the Evidence Against the Defendant

The second factor to be considered, the weight of the evidence, also clearly weighs in favor

of detention.   The evidence against the defendant is quite strong.   As set forth above, video

footage depicts the defendant setting the fire at Comet Ping Pong.   The camera footage provides

multiple angles of the offense, from the defendant entering the restaurant, to walking through the

restaurant to the area of the fire, and even approaching the camera after setting the fire.   The

defendant was wearing the distinctive jacket the evening of the fire and he was wearing the same

jacket when he was arrested less than two weeks later.   In addition, a witness who was present at

Comet Ping Pong the evening of January 23, 2019, identified the defendant in a photo.   Moreover,

the defendant's vehicle was located both near the area of the fire on the day of the arson, as well

as near where he was subsequently arrested in February.

### The Defendant's History and Characteristics

The third factor, the history and characteristics of the person, similarly weighs in favor of

detention. While the defendant's criminal history prior to this event is limited, in less than a month,

he has committed multiple criminal acts.   Indeed, after being arrested on February 4, 2019, and

ordered not to return to the offense location, the defendant violated the court's Stay Away Order

the very next day and was charged with Contempt.   In fact, the defendant had his Stay Away

Order with him and gave it to the USPP officers when they inquired if he had been arrested in that

7

location the day before.   Moreover, the defendant told the officers that he would return because "third times a charm."   The defendant's repeated criminal conduct demonstrates that he is unlikely to abide by the court's orders and no condition or combination of conditions could ensure the safety of the community.

### Danger to the Community

The fourth factor, the nature and seriousness of the danger to any person or the community posed by the defendant's release, also weighs in favor of detention. As discussed above, the charged offense carries with it a rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community" where a judicial officer determines that there is probable cause to believe that the person committed the charged offense. 18 U.S.C. § 3142(e)(3) and (e)(3)(C). By itself, an indictment establishes that probable cause and triggers the presumption.   See, e.g., Smith, 79 F.3d at 1210 ("the indictment alone would have been enough to raise the rebuttable presumption that no condition would reasonably assure the safety of the community").

The presumption is rebuttable and does not shift the ultimate burden of proof from the government's shoulders. But, it does create a burden of *production* on the defense to submit at least some credible evidence that might purport to overcome it. See Alatishe, 768 F.2d at 371. And even if the defense does submit such evidence, the presumption remains as a factor that may be considered by the Court among others in determining whether the defendant should be detained, and the presumption retains "evidentiary weight." United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991) ("When a defendant produces such evidence, however, the presumption does not disappear. The burden of persuasion remains on the government and the rebutted presumption

8

retains evidentiary weight") (citations omitted); see also United States v. Ali, 793 F.Supp.2d 386, 388 and 388 n.2 (D.D.C. 2011) ("Even if such contrary evidence or credible proffers are offered, the presumption remains as a factor to be considered by the Court amongst others in determining whether the defendant should be detained").

Even without a presumption, the defendant's recent conduct overwhelmingly demonstrates that he is a danger to the community.   The night of January 23, 2019, the defendant set fire to an occupied restaurant, without regard to the safety of the patrons or the staff.   Indeed, he walked right past people in the game room and, after setting the fire, walked past them again as he exited. The defendant's conduct also appears premeditated; after his first attempt to start the fire was unsuccessful, the defendant did not abandon his dangerous plan, rather, he briefly left, but returned to set the fire and only then did he leave the restaurant.   The defendant also attempted to disable the surveillance cameras in an effort to hide his criminal activity.

Furthermore, less than two weeks after the fire, on the evening of February 4, 2019, the defendant assaulted two USPP officers, striking one in the nose and drawing blood.   Undeterred by his arrest, he returned the next day, and despite a court order to stay away, was found inside the Washington Monument.   When officers tried to arrest the defendant, he told them that he would fight them as he had the officers the day before.   While the second arrest occurred without assault and injury, as indicated above, the defendant told the officers that he would return to the location again.   The defendant's conduct demonstrates that he poses a danger to the community if released.

## Conclusion

The government reserves the right, and will make, further arguments at the detention hearing.   The government respectfully requests this Court to find, by clear and convincing

evidence, that no condition or combination of conditions can be imposed that would reasonably assure the safety of the community or ensure the defendant's appearance at future court proceedings. This Court should order that the defendant be held without bond during the pendency of this case to protect the safety of others and the community from the defendant.

**WHEREFORE**, we respectfully request that the Court issue an Order granting the government's motion that the defendant be held without bond.

Respectfully submitted,

JESSIE K. LIU
UNITED STATES ATTORNEY
D.C. Bar No. 472-845

By: _____/s/_____
Jillian D. Willis, D.C. Bar No. 995811
Dineen A. Baker, D.C. Bar No. 487820
Assistant United States Attorneys
555 4th Street, N.W., Fourth Floor
Washington, D.C. 20530
(202) 252-0884 (Willis)
(202) 252-6954 (Baker)
*jillian.willis@usdoj.gov*
*dineen.baker@usdoj.gov*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I caused a copy of this pleading to be served upon defense counsel, David Boss, via the Electronic Case Filing (ECF) system, this 19th day of February, 2019.


*/s/*

_____
Dineen A. Baker
Assistant United States Attorney