**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**UNITED STATES OF AMERICA,**

        **v.**　　　　　　　　　　　　　　　　**CRIMINAL NO.  19-64 (TJK/GMH)**

**RYAN JASELSKIS,**

        **Defendant.**

**DETENTION MEMORANDUM**

This matter comes before the Court upon the application of the United States that Defendant, Ryan Jaselskis, also known as Ryan Rimas, be detained pending trial.  Defendant has been charged by indictment with one count of arson, in violation of 18 U.S.C. § 844(i).  The United States requested a detention hearing under 18 U.S.C. § 3142(f)(1)(A), which the Court held on February 19, 2019.  The Court now finds that Defendant should be held without bond.  This memorandum is submitted in compliance with the statutory obligation that "the judicial officer shall . . . include written findings of fact and a written statement of the reasons for the detention." 18 U.S.C. § 3142(i)(1).

**FINDINGS OF FACT**

At the detention hearing, the United States proceeded by proffer based on the indictment.  The defense offered no contrary evidence.  Accordingly, the Court makes the following findings of fact:

On the evening of Wednesday, January 23, 2019, between approximately 9:00 p.m. and 9:15 p.m., Defendant walked into Comet Ping Pong, a family-friendly pizzeria located in the Chevy Chase neighborhood of Washington, D.C.  Defendant walked through the restaurant wearing a distinctive blue and white jacket.  He passed through a game room where at least six

adults and two children were playing table games to a back bar room.  There, Defendant doused a decorative curtain with lighter fluid before attempting to light it.  This first attempt evidently failed, and Defendant briefly left the restaurant before returning to try again.  This time, Defendant successfully lit the curtain on fire.  He watched the fire burn before turning to leave.  As Defendant was about to depart, he noticed a surveillance camera in the bar room.  He walked over to the camera and struck it, apparently in an attempt to disable it.  The camera continued to function, but Defendant's effort did provide the camera with a relatively clear view of his face.  Defendant then departed the scene, leaving the curtain burning in the back bar room of a restaurant occupied by staff, patrons, and children.  One of these patrons noticed the fire and ran to put it out.  After pulling down the curtain, the patron poured a pitcher of liquid on the fire.  Staff from the restaurant's kitchen then came to assist the patron, and together they put out the fire with a fire extinguisher.

District of Columbia Fire and Rescue units responded to the scene.  Fire investigators found fire damage and burn marks on the wall and ceiling where the curtain had been.  The investigators attributed this damage to the January 23, 2019 fire.  The investigators found matches and accelerant on the ground beneath the curtain and a bottle of lighter fluid sitting on a nearby table.

In 2016, Comet Ping Pong was the site of another violent incident where a man with multiple firearms entered the restaurant and fired several rounds.  Perhaps as a consequence of the 2016 incident, the restaurant has installed surveillance cameras throughout, and these cameras captured Defendant's conduct on the evening of January 23, 2019.  In an effort to identify the person who started the fire, police disseminated a portion of this surveillance video—it depicts Defendant wearing the distinctive blue and white jacket.

On February 4, 2019, Defendant jumped a security fence at the Washington Monument,

which was closed to the public for renovations.  When officers of the United States Park Police confronted Defendant, he fought them, injuring one, causing bleeding.  Defendant was arrested and charged with assault on a police officer and unlawful entry (D.C. Superior Court Case No. 2019 CMD 001696).  On February 5, 2019, Defendant was released on conditions by the District of Columbia Superior Court.  These conditions included an order to stay away from the Washington Monument grounds.  That same day, Defendant again jumped the security fence at the Washington Monument.  When United States Park Police officers confronted Defendant this time, he told them he was again prepared to fight.  The officers asked Defendant why he had jumped the fence, and he presented them with the stay away order.  Despite Defendant's threat to fight the officers, he was arrested without incident and was charged with unlawful entry, destruction of property, and contempt (D.C. Superior Court Case No. 2019 CMD 001758).  On February 13, 2019, the Superior Court released Defendant on conditions, apparently aware that this Court had already issued an arrest warrant in this case.

During both arrests at the Washington Monument, Defendant was wearing the distinctive blue and white jacket worn in the surveillance video at Comet Ping Pong.  Based on this jacket, the fire investigators were notified.  The investigators created a nine-photograph spread and presented it to a patron who was present at Comet Ping Pong on the evening of January 23, 2019.  That patron positively identified Defendant as the person who started the fire.  Further, investigators determined that Defendant is the owner of a 2007 Toyota Matrix registered in California.  Surveillance cameras show that vehicle departing the area of Comet Ping Pong within two minutes of Defendant's departure from the restaurant.  The same vehicle received parking tickets in the vicinity of the Washington Monument on February 5 and 6, 2019, the days when

Defendant was arrested there.

## LEGAL STANDARD

Section 3142 imposes a rebuttable presumption of dangerousness and flight risk on certain defendants based on the crimes with which they are charged, their prior convictions, or similar considerations. *See* 18 U.S.C. § 3142(e)(2), (3).  For purposes of determining whether a rebuttable presumption is triggered, "[a] grand jury indictment, by itself, establishes probable cause to believe that a defendant committed the crime with which he is charged." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010); *United States v. Smith,* 79 F.3d 1208, 1210 (D.C. Cir. 1996) ("[T]he indictment alone would have been enough to raise the rebuttable presumption that no condition would reasonably assure the safety of the community.").  Here, Defendant has been indicted with arson under 18 U.S.C. § 844(i).  This offense triggers the rebuttable presumption of section 3142(e)(3)(C), which provides that "[s]ubject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure [(1)] the appearance of the person as required and [(2)] the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed . . . an listed in section 2332b(g)(5)(B) of title 18, United States Code, for which a maximum term of imprisonment of 10 years or more is prescribed."  18 U.S.C. § 3142(e)(3)(B).  The indicted offense carries a maximum term of imprisonment of 20 years, and it is listed in 18 U.S.C. § 2332b(g)(5)(B).

Once the rebuttable presumption is triggered, it "operate[s] *at a minimum* to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." *See United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985).  As this Court has emphasized, "[w]hile the burden of production may not be heavy, the applicable cases all speak

in terms of a defendant's obligation to introduce 'evidence.'" *United States v. Lee*, 195 F. Supp. 3d 120, 125 (D.D.C. 2016) (citations omitted).   Thus, the defendant must offer not mere speculation, but "at least some evidence," or basis to conclude that the presumption has been rebutted in his or her case.   *Stone*, 608 F.3d at 945–46; *Alatishe*, 768 F. 2d at 371; *see also United States v. Taylor*, 289 F. Supp. 3d 55, 63 (D.D.C. 2018).   Specifically, a defendant "should 'present all the special features of his case' that take it outside 'the congressional paradigm'" giving rise to the presumption.   *Stone*, 608 F.3d at 946 (quoting *United States v. Jessup*, 757 F.2d 378, 387 (1st Cir. 1985)); *see also United States v. Portes,* 786 F.2d 758, 764 (7th Cir. 1985) (presumptions in section 3142(e) "are 'rebutted' when the defendant meets a 'burden of production' by coming forward with some evidence that he will not flee or endanger the community if released").

That said, the burden of persuasion on the issue of detention remains, as always, with the government.   *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001).   But even where the defendant offers evidence to rebut the presumption, the presumption is not erased.   It is "not a 'bursting bubble' that becomes devoid of all force once a defendant has met his burden of production." *Taylor*, 289 F. Supp. 3d at 63 (quoting *Jessup*, 757 F.2d at 382).   Rather, even after the defendant carries his burden of production, the presumption "remains in the case as an evidentiary finding militating against release, to be weighted along with other evidence relevant to factors listed in § 3142(g)."   *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986); *Taylor*, 289 F. Supp. 3d at 63 ("[T]he judicial officer must 'keep in mind the fact that Congress has found that' those charged with the specified offenses are likely to pose a danger to the community." (quoting *Jessup*, 757 F.2d at 384)); *United States v. Ali*, 793 F. Supp. 2d 386, 391 (D.D.C. 2011).

## ANALYSIS

### A.      Application of the Rebuttable Presumption

Because Defendant has been charged with an offense under 18 U.S.C. § 844(i), the rebuttable presumption in favor of pretrial detention pursuant to 18 U.S.C. § 3142(e)(3)(C) applies here.  Defendant argues that he is entitled to release pending trial because he questions the strength government's evidence and because he argues conditions short of detention could ensure his appearance and the safety of the public.  Specifically, Defendant argues that the witness identification may be unreliable because the government has not provided more information about the photo array it used.  He also questions the fire inspectors' basis for determining that the burning curtain damaged Comet Ping Pong's wall and ceiling and argues that the government has not introduced evidence that the fire was set intentionally.  Moreover, Defendant argues that this Court should release him on the same conditions as the Superior Court because that court was apparently aware he faced the present federal charge when it decided to release him on February 13, 2019. Finally, Defendant argues detention is unnecessary in this case because his parents—both former military officers—could supervise him as third-party custodians.

The Court finds that Defendant has failed to produce at the hearing any "credible evidence contrary to the statutory presumption" of his dangerousness were he to be released or that he is a flight risk, and therefore has not rebutted the presumption.  *Alatishe*, 768 F. 2d at 371.  Although the government may face some challenges at trial, when the evidence is looked at as a whole, it is a compelling case, even discounting the Comet Ping Pong patron's identification.  An individual bearing a striking resemblance to Defendant was captured on surveillance video entering the restaurant, lighting a curtain on fire, attempting to disable a surveillance camera, and departing the

scene as the fire burned.  Another surveillance camera captured that same individual exiting the restaurant, and yet another surveillance camera recorded a car registered to Defendant leaving the area less than two minutes later.

The individual in all of this surveillance footage was wearing a distinctive blue and white jacket identical to the one Defendant wore both times he was arrested at the Washington Monument.  Likewise, the car registered to Defendant received parking tickets in the vicinity of the Washington Monument on each of the days he was arrested there.  Taken together, this evidence supports a strong inference that the individual in the Comet Ping Pong surveillance video is Defendant, even without the patron's photo array identification.  Moreover, despite Defendant's suggestion that the damage that fire inspectors observed at the restaurant may have predated the fire at issue here, he did not produce any evidence that this was the case.  Further, the inspectors' opinion that the January 23, 2019 fire caused this damage was based on their training and experience.  Defendant's other argument—that the fire might have been set accidentally—is belied by his use of lighter fluid as an accelerant, the fact that after his initial failed attempt to set the curtain on fire he returned to try a second time, and the fact that he made no attempt to extinguish the fire.

Finally, Defendant's argument that he should be released on conditions because the Superior Court released him and his parents could serve as third-party custodians is unavailing. First, the calculus facing the Superior Court judges who released Defendant was different.  Even if those judges were aware of the federal charge against Defendant, that charge was not before them.  Rather, what was before them was Defendant's local misdemeanor charges.  Moreover, the charged offense in this case carries a 5-year mandatory minimum sentence and a maximum period

Case 1:19-cr-00064-TJK   Document 5   Filed 02/26/19   Page 8 of 13

of incarceration of 20 years, reflecting the gravity of the charged offense.  As explained in greater detail below, because Defendant has flouted recent court orders the undersigned has no confidence he would comply with any conditions this Court could set, whether or not his parents agreed to serve as third-party custodians.

Defendant has offered no evidence to rebut the presumption that he would pose a danger to the community were he to be released and that he is a flight risk, and therefore he has not rebutted the presumption.  *Alatishe*, 768 F. 2d at 371.  Accordingly, Defendant shall be held pending trial.

### B.    The Four Factors of Section 3142(g)

Even had Defendant fully rebutted the presumption in favor of his detention, and the Court were to consider the Bail Reform Act's four section 3142(g) factors, the conclusion would be the same:  Defendant should be held without bond pending trial.  The four factors that must be considered in making a bond determination are: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.  18 U.S.C. § 3142(g).  Further, where, as here, a rebuttable presumption applies, it "remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)," even if the defendant has met his or her burden of production of offering some credible evidence to the contrary. *Dominguez*, 783 F.2d at 707; *Taylor*, 289 F. Supp. 3d at 63; *Ali*, 793 F. Supp. 2d at 391; *see also United States v. Cherry*, 221 F. Supp. 3d 26, 33 (D.D.C. 2016) ("Congress's assessment, as expressed in the presumption, of the danger posed to the community by individuals charged

with federal crimes of terrorism must be respected and is itself sufficient reason alone to hold the defendant without bond pending trial in this matter.").

       1.     Nature and Circumstances of the Charged Offense

The first factor, the nature and circumstances of the charged offense, favors detention. This factor asks the Court to consider "the nature and circumstances of the offense charged" as a general matter, but points especially to instances where the offense is a crime of violence. 18 U.S.C. § 3142(g)(1). Here, the charged offense—arson—is a crime of violence. *See United States v. Mitchell*, 23 F.3d 1, 2 & n.8 (1st Cir. 1994) (explaining that arson under 18 U.S.C. § 844(i) falls within 18 U.S.C. § 3156(a)(4)'s definition of "crime of violence" and collecting cases).

Defendant faces a maximum of twenty years in prison for the charged offense and a mandatory minimum sentence of five years—significant penalties that reflect the seriousness of the charge. Indeed, the rebuttable presumption Congress created for this offense reflects its judgment that persons who commit these offenses pose a substantial threat to the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(A); *United States v. Bess*, 678 F. Supp. 929, 934 (D.D.C. 1988); *Cherry*, 221 F. Supp. 3d at 33. Moreover, the circumstances here are especially serious. Defendant set fire to a curtain in a restaurant during service hours when staff and patrons, including children, were present. Were it not for the alert response by a patron and the restaurant's staff, the fire here might have had tragic consequences. As courts have observed in other cases involving defendants who set fire to buildings they knew to be occupied, "[i]t is difficult to imagine a clearer illustration of the knowing creation of a substantial risk of death or serious bodily injury." *United States v. DiSanto*, 86 F.3d 1238, 1258 (1st Cir. 1996) (quoting *United States v. Honeycutt*, 8 F.3d 785 (11th Cir. 1993)). For these reasons the undersigned finds that the gravity of the charged

offense favors detention.

2. The Weight of the Evidence

The Court finds that the weight of the evidence also favors detention.  Surveillance cameras inside the restaurant recorded the perpetrator: entering the restaurant; walking through the occupied restaurant to the back bar room; attempting once to light a decorative curtain on fire, and failing; departing after this initial failed attempt before returning to try again; succeeding on the second attempt to light the curtain; striking a surveillance camera in an apparent attempt to disable it; and departing the scene while the fire burned and the restaurant remained occupied.  The video is fairly clear and shows an individual who looks like Defendant.  Moreover, a restaurant patron identified Defendant as the person who started the fire.  Further, a surveillance camera outside of the restaurant recorded perpetrator exiting, and less than two minutes later, another surveillance camera recorded Defendant's car leaving the area.  Throughout this footage, the perpetrator was recorded wearing the same distinctive blue and white jacket that Defendant would be arrested in twice at the Washington Monument.  Likewise, the Defendant's car was not only captured on video near Comet Ping Pong on the night of the fire, but it also received parking tickets near the Washington Monument on both days he was arrested there.  Fire investigators found lighter fluid and matches at the foot of the curtain, located a bottle of lighter fluid on a nearby table, and attributed damage on the restaurant's wall and ceiling to the January 23, 2019 fire.

Finally, despite Defendant's argument to the contrary, the government's case includes the following substantial evidence that the perpetrator set the fire intentionally: (1) after his first failed attempt to set the curtain on fire, he departed the restaurant briefly before returning to try again; (2) he used lighter fluid as an accelerant; and (3) he made no attempt to extinguish the fire once it

was set.

The undersigned finds that the weight of the government's evidence in this case is compelling and favors detention.

### 3.  The History and Characteristics of the Defendant

This factor also favors detention.  Section 3142 directs the Court to consider:  (1) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (2) whether, at the time of the current offense or arrest, the defendant was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal, state, or local law.  18 U.S.C. § 3142(g)(3)(A)–(B).

While Defendant does not appear to have had contact with the criminal justice system prior to January 2019, his conduct in the weeks since his arrival in Washington, D.C. is cause for concern.  In the span of three weeks, Defendant has been charged with setting the fire at Comet Ping Pong and twice scaling a fence to unlawfully enter the Washington Monument grounds.  In the first of his incursions at the Washington Monument, Defendant fought with the responding police officers, injuring one of them.  In the second, he deliberately disobeyed a court order to stay away.  This spree of erratic, unlawful activity suggests Defendant's otherwise apparently lawful past is not a good predictor of his present behavior.  For this reason, although the formula used to develop his pretrial services report categorized Defendant as low risk for failure to appear, global re-arrest, and dangerous/violent re-arrest, the Pretrial Services Agency recommended his detention.  Moreover, Defendant is not from this area and appears to have come to Washington,

D.C. to engage in unlawful conduct.  In addition, although Defendant has apparently worked as an actor, his current employment status is unverified.

Also of great concern to the undersigned is Defendant's disregard for the Superior Court's stay away order.  On the same day that the Superior Court released him and ordered him to stay away from the Washington Monument grounds, Defendant defied that court's order—doing exactly what the court ordered him not to do.  Moreover, Defendant was fully aware of the Court's order—indeed, he presented it to the responding United States Park Police officers when they confronted him on the Washington Monument grounds.  In light of his apparent disdain for court orders, the undersigned has no confidence that Defendant would comply with any conditions of release fashioned by this Court, whether or not his parents were to serve as third-party custodians.

4.      The Danger to the Community

The fourth factor, the danger to the community posed by the defendant, weighs in favor of detention.  The danger to the community posed by the alleged conduct is discussed above and requires no further explanation here.

For these reasons, the Court has little confidence that, if released, Defendant would not continue to engage in criminal activity or that he would appear in court as required.  The undersigned therefore finds that there is no condition or combination of conditions that would keep the community safe and assure Defendant's presence in court if he were released.

## CONCLUSION

Based on the consideration of all the evidence, the factors set forth in section 3142(g), the rebuttable presumption under section 3142(e)(3)(C), and all lesser restrictive alternatives to pretrial detention, the Court finds by clear and convincing evidence that no condition or

combination of conditions exist that would reasonably assure the safety of any other person or of the community if Defendant was released. The Court further finds by a preponderance of the evidence that no condition or combination of conditions will reasonably assure Defendant's appearance as required. Therefore, the government's motion for pretrial detention is **GRANTED**.

### DIRECTIONS REGARDING DETENTION

Defendant is **ORDERED** remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. Defendant must be afforded reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility must deliver Defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

Date:  February 26, 2019

_____
G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE