**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CRIMINAL NO. 19-64 (TJK)** |
| | : | |
| **RYAN JASELSKIS,** | : | |
| **also known as "RYAN RIMAS"** | : | |
| | : | |
| **Defendant.** | : | |
| _____ | : | |

<u>**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**</u>

The United States of America, by its undersigned counsel, hereby files its Memorandum in Aid of Sentencing in this matter.   For the reasons set forth below, the government asks the Court to sentence the defendant to the agreed-upon sentence of forty-eight months of incarceration, to be followed by three years of supervised release, and that the defendant to be ordered to pay restitution for damage done to the Comet Ping Pong Restaurant.

**FACTUAL AND PROCEDURAL BACKGROUND**

As reflected in paragraph 12 of the February 28, 2020 Presentence Investigation Report ("PSR") (ECF Document 19), on January 23, 2019, Defendant Ryan Jaselskis entered the Comet Ping Pong Restaurant located at 5037 Connecticut Ave. NW.   On that Wednesday night, the business was open and there were multiple patrons inside eating and playing games.   (PSR ¶ 12). As captured on surveillance footage, the defendant passed through the restaurant and game room to a back bar area that was closed to the public.   (PSR ¶ 12).   A twenty foot by twenty foot black curtain covered the rear wall of the bar and the defendant approached it, crouched down, doused it with lighter fluid, and attempted to ignite it.   (PSR ¶ 12).   These attempts failed and the defendant left the restaurant, only to return approximately a minute later and return to the back bar

1

area.  (PSR ¶ 12).   The defendant returned to the curtain, ignited a large fire, and then left the restaurant.   (PSR ¶ 12).   A restaurant patron and two kitchen employees were able to quickly grab the curtain and extinguish it, preventing further damage to the structure or danger to the building's occupants.   (PSR ¶ 12).

On February 4, 2019, at approximately 6:00 p.m., United States Park Police Officers Oh and Rivera were on a uniformed patrol when they encountered the defendant within the construction site at the Washington Monument.   (PSR ¶ 13).   When the officers attempted to communicate with the defendant, he ignored them.   (PSR ¶ 13).   As the officers began to put handcuffs on the defendant, he stood up and started fighting with Officer Oh, striking him in the nose and drawing blood.   (PSR ¶ 13).   The defendant then began to fight with Officer Rivera and both men fell to the ground.   (PSR ¶ 13).   Once the defendant was detained, Officer Oh assessed his injuries, revealing a bloody nose, a cut on his left hand, and scrapes on his legs. (PSR ¶ 13).

On December 17, 2019, the defendant pled guilty, pursuant to Rule 11(c)(1)(C), to Count One, Assaulting, Resisting, or Impeding Certain Officers or Employees, in violation of 18 USC §111(a)(1) and Count Two, Arson, in violation of D.C. Code § 22-301.   (PSR ¶¶ 4, 6).

Although the defendant was raised by a supportive and loving family, the PSR details some significant childhood challenges he faced (*see e.g.* PSR ¶ 38).   It also describes the defendant's recent mental health concerns (PSR ¶ 46).   Despite experiencing troubling episodes in October and December 2018, the defendant decided not to follow through with medically recommended treatment.   (PSR ¶¶ 45, 50, 53).   In December 2018, the defendant received a mental health diagnosis, a treatment plan, and medication.   (PSR ¶¶ 46, 53).   Again, he decided not follow medical advice.   (PSR ¶¶ 45, 53)   The offenses the Court will sentence the defendant for occurred

2

within six weeks of this choice.

The defendant has a history of substance abuse (PSR ¶¶ 54 - 58). It appears that the defendant's behavior might have been exacerbated by the defendant's substance use, a belief members of the defendant's family share. (PSR ¶ 55). Although the defendant has been incarcerated during the pendency of this case and has been undergoing more reliable mental health treatment and medication compliance, it appears that his substance abuse issues have deepened. (PSR ¶ 58).

Despite this issue with his pretrial incarceration, the defendant has primarily distinguished himself during his time at the D.C. Jail. Continuing his childhood tradition of academic and extracurricular excellence, the defendant appears to have thrown himself into the available activities in the jail, both enriching himself and helping others. (PSR ¶¶ 59-62).

In preparation for sentencing, the government spoke with the owner of Comet Ping Pong, who expects to attend sentencing and provide a Victim Impact Statement and restitution request to the Court, and Park Police Officer Oh, who likely will not attend sentencing but wishes the Court to know that he believes the agreed-upon sentence appears to him to be a fair resolution.

## SENTENCING FACTORS

The United States Sentencing Guidelines ("U.S.S.G.") provide advisory recommendations which the courts "must consult . . . and take . . . into account when sentencing," *United States v. Booker*, 543 U.S. 220, 264 (2005), defendants for violations of the United States Code. As the Supreme Court has explained, "[a]s a matter of administration and to secure nationwide consistency, the Sentencing Guidelines should be the starting point and the initial benchmark" in for determining the appropriate sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007). The PSR

indicates that, after accounting for the applicable specific offense characteristics and a three-point deduction for the defendant's acceptance of responsibility, the offense level for Count One (Assaulting Certain Officers) is "11."   The Probation Office further determined that the defendant has a criminal history score of "I" under the U.S.S.G.   Finally, the Probation Office determined that, based on the defendant's offense level and criminal history score, the U.S.S.G. recommend a sentence of 8 to 14 months of incarceration, which can be satisfied by imprisonment, a split of imprisonment and community confinement/home detention, or probation. (PSR ¶¶ 77, 78).

Whereas the United States Code and the U.S.S.G. are applicable to the defendant's sentence for Count One, the defendant's sentence for Count Two (Arson) must be determined according to the District of Columbia Code. *See United States v. Cutchins*, 956 F.2d 1216, 1219 (D.C. Cir. 1992) (explaining that "the [U.S.S.G.] apply only to federal crimes under 18 U.S.C. § 3551(a)" and that "violations of the D.C. Code can only be sentenced under the D.C. Code."). The District of Columbia Courts typically sentence felony violations of the D.C. Code with reference to the D.C. Voluntary Sentencing Guidelines ("D.C.V.S.G."). Pursuant to an Administrative Order of the D.C. Superior Court, D.C. Superior Court judges are expected either to follow the D.C.V.S.G. or, if they choose not to follow the D.C.V.S.G., to explain why they chose not to do so. However, it should be noted that the D.C.V.S.G. are entirely voluntary, and an otherwise lawful sentence may not be appealed on the theory that the court misapplied the D.C.V.S.G.   *Speaks v. United States*, 959 A.2d 712, 717-20 (D.C. 2008).

As set out in the PSR, under the D.C.V. S.G., the recommended sentences are based on two factors:  the "Offense Group" of the offense, and the defendant's Criminal History Score. The Probation Office determined that Count Two (Arson) is a Group 6 offense, that the defendant

has a Criminal History Score of "0," and that given those two factors, the D.C. V.S.G. recommend a sentence of 18 to 60 months of incarceration.   A sentence in this range allows for a term of imprisonment, compliant long split, or short split permissible. (PSR ¶¶ 79, 80).

The U.S.S.G. and the D.C.V.S.G. each provide a framework through which courts can determine whether sentences for multiple counts should run concurrent or consecutive. However, the U.S.S.G. does not provide a framework for determining how to account for D.C. Code violations, and the D.C.V.S.G. does not provide a framework for determining how to account for U.S. Code violations. The D.C. Circuit has held that, "[b]ecause the Guidelines are silent on the issue," it is a "matter of discretion" for the sentencing court. *Cutchins*, 956 F.2d at 1219.

In sentencing a defendant, after calculating the appropriate Guidelines range, the Court must consider the factors set forth in 18 U.S.C. § 3553.   *See Gall v. United States*, 552 U.S. 38, 50 (2007).   Courts traditionally consider the following factors when imposing a sentence: (1) the protection of society against wrongdoers; (2) the punishment or discipline of the wrongdoer; (3) the reformation of the wrongdoer; and (4) the deterrence of others from the commission of like offenses.   *See Spanziano v. Florida*, 468 U.S. 447, 477-78 (1984) (Stevens, J., concurring); *see also Williams v. New York*, 337 U.S. 241, 251 (1949).   Under the Guidelines and Section 3553, similarly situated defendants should receive like punishments.   *See* 18 U.S.C. § 3553(a)(6).

The D.C. Code requires the consideration of similar factors. D.C. courts must impose a sentence that (1) reflects the seriousness of the offense and the criminal history of the offender; (2) provides for just punishment and affords adequate deterrence to potential criminal conduct of the offender and others; and (3) provides the offender with needed educational or vocational training, medical care, and other correctional treatment." D.C. Code § 24-403.01(a). The D.C. Code does

5

not adopt a factor that specifically addresses protecting the public, but protecting the public is certainly part of providing "deterrence to potential criminal conduct of the offender and others."

## ARGUMENT

The Government does not object to the Guidelines and criminal history calculations as determined by the Presentence Report writer in this case.   The Government requests that the Court impose the agreed-upon sentence as a just sentence that protects society, punishes the defendant, reforms the defendant, and deters others from committing a similar offense.

The defendant has had minimal prior contacts with the criminal justice system, to include no prior convictions and no periods of incarceration.   However, the conduct in the instant offenses was significantly dangerous, in assaulting an armed and uniformed law enforcement officer and setting fire to an occupied commercial structure.   Compounding this, when the defendant failed in his initial attempt to set fire to the restaurant, he left and came back in order to finish the task he had begun, demonstrating both premeditation and strong intentionality.   The defendant's background reveals both an intelligent and talented individual with family support, who has had struggles that include mental health and substance abuse.   Despite having the means and support to address these challenges, the defendant instead chose to self-medicate and exacerbate his behavior, becoming focused on a conspiracy theory that led to the commission of the instant offenses.

The agreed-upon sentence of forty-eight months of incarceration is a significant period of incapacitation that will both punish the defendant and protect society.   It is imperative that the defendant understand the importance of maintaining his sobriety and mental health treatment at the time of his release, to avoiding repeating the type of incidents that led to the instant charges.

This period of incarceration will send this message and encourage the defendant to reform himself upon his release as well as dissuade others from similar conduct.

Finally, the government notes that the recommended sentence is the same sentence that was imposed in *United States v. Edgar Maddison Welch*, 16-CR-00232.   Although there are some clear differences between the specific criminal conduct of these two individuals, the government submits that the defendant is similarly situated to Mr. Welch.   Mr. Welch had minimal criminal history and became fixated on a conspiracy theory centered on the Comet Ping Pong restaurant where he perpetrated a violent act that put the patrons and employees in the restaurant in significant danger by barging into the occupied restaurant, heavily armed, while discharging his firearm. Although Mr. Welch might have come closer to causing grievous or deadly injury due to firing a gun, the defendant in this case caused more property damage and caused bodily injury to a uniformed federal officer.   In both cases, the lead charge the defendant accepted responsibility for was a D.C. Code offense that was a group 6 offense, both men had a Criminal History Score of "0," and their recommended sentencing ranges were 18 to 60 months.   Because the parties' recommended sentence of forty-eight months of incarceration is just, protects society, allows for the punishment and reformation of the defendant, deters others from committing similar offenses, and is the same sentence as was imposed against a similarly-situated defendant, the government asks the Court to accept it.

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, the government respectfully requests that the

Court accept the agreed upon sentence.

Respectfully submitted,

TIMOTHY SHEA
United States Attorney
D.C. Bar No. 437437

By:    */s/*_____
DINEEN BAKER, D.C. Bar No. 995811
ANDREW FLOYD, D.C. Bar No. 1023315
Assistant United States Attorneys
555 4th Street, N.W.
Washington, D.C. 20001