**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | **Case No. 19-CR-64 (TJK)** |
| | ) | |
| RYAN JASELSKIS, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**<u>DEFENDANT'S MEMORANDUM IN AID OF SENTENCING</u>**

Ryan Jaselskis, by his attorney, David W. Bos, Assistant Federal Public Defender, hereby submits the following memorandum in aid of sentencing in this matter. Pursuant to the sentencing factors set forth in 18 U.S.C. §3553(a) as delineated in *Rita v. United States*, 127 S. Ct. 2456 (2007), *Kimbrough v. United States*, 128 S. Ct. 558 (2007) and *Gall v. United States*, 128 S. Ct. 586 (2007), Mr. Jaselskis respectfully requests that the Court impose a sentence of 48 months on Count One; and 12 months on Count Four, to run concurrent with sentence imposed in Count One. Mr. Jaselskis further requests the Court to impose a term of Supervised Release of three years, the maximum period of supervision allowed in this case. Mr. Jaselskis requests the Court to recommend to the Bureau of Prisons that Mr. Jaselskis continue to receive mental health treatment while in BOP custody, and order the Probation Department to provide mental health treatment for Mr. Jaselskis while on Supervised Release. *See, Pre-Sentence Report (PSR)* ¶ ¶ 45-53. Mr. Jaselskis requests the Court to recommend to the Bureau of Prisons that Mr. Jaselskis participate in the 500 hours RDAP drug treatment program, and order the Probation Department to provide substance abuse treatment for Mr. Jaselskis while on Supervised Release. *PSR* at ¶¶

54-58. Finally, with regard to Count Two, which is a D.C. Code Offense, Mr. Jaselskis request

the sentence for that count be imposed pursuant to the D.C. Youth Rehabilitation Act.[1]

Mr. Jaselskis submits that the requested sentence is "sufficient, but not greater than

necessary, to comply with the purposes" set forth in 18 U.S.C. §3553.  In support of this request,

counsel states:

BACKGROUND

1.  Mr. Jaselskis appears before the Court for sentencing after having pled guilty pursuant

to Rule 11©(1)© of the Federal Rules of Criminal Procedure to one count of assaulting,

resisting, or impeding certain officers or employees, in violation of 18 U.S.C. §111(a)(1), and

one count of arson, in violation of 22 D.C. Code Section 301. The incident which gave rise to

Count One occurred on February 4, 2019, at the Washington Monument. The incident which

gave rise to Count Two occurred on January 23, 2109, at the Comet Ping Pong restaurant.

2.  Mr. Jaselskis is just 23 years old. He appears before the Court as a Criminal History

Category I offender with a Criminal History Score of zero. *PSR* ¶ 30.

3. Shortly before he committed the instant offenses more than fifteen months ago, Mr.

Jaselskis had been diagnosed with Bi-Polar Disorder, Depression, and Attention Deficit

Disorder. *PSR* ¶ 45. That diagnosis occurred after Mr. Jaselskis was civilly committed to a

---

[1] Defendants under the age of 24 who have been found guilty of a certain D.C. Code offenses (of which Arson is one) may be sentence pursuant to Youth Rehabilitation Act. D.C. Code ¶¶ 24-901 to 906. The YRA does not affect the length of a sentence the Court can imposed or limit what conditions of supervised release the Court can impose. And the conviction remains available to law enforcement personnel and court officials. The YRA, however, allows the defendant to petition the Court -- at the conclusion of his entire sentence -- to "set aside" the conviction by removing the conviction from the public docket so as not to deprive the defendant of voting or contractual rights or other aspects of citizenship.

psychiatric facility in New Jersey.[1] At the time of his commitment, Mr. Jaselskis was treated with Thorazine for psychosis and agitation, Lorazepam for severe anxiety and Diphenhydramine for insomnia. Once stabilized, Mr. Jaselskis was treated with Lithium, which he received twice a day. PSR ¶ 46. He also participated in group, family and individualized counseling. Mr. Jaselskis responded well to the medications and activity participated in the therapy sessions while at the psychiatric facility.

Mr. Jaselskis was discharged from the psychiatric facility on January 2, 2019. He went to live with his grandparents in New Jersey upon his release. At the time of his discharge, Mr. Jaselskis was given a prescription for a sixty-day supply of Lithium, and a referral to start out-patient counseling on January 9, 2019. Not realizing the seriousness of his mental illness upon his release, Mr. Jaselskis was tragically non-compliant with his mental health treatment regimen. Although he had the Lithium prescription filled, he stopped taking the medication within days of his discharge. And he did not follow through with out-patient counseling, as directed by the psychiatric facility.

On January, 15, 2019, Mr. Jaselskis told his grandparents he was going to Washington, D.C., to visit friends. Mr. Jaselskis remained in contact with his family via telephone and texts after he left his grandparents' house.  Unbeknownst to his family, Mr. Jaselskis was not visiting friends in D.C. but instead living in his car on the streets of Washington and the surrounding area.

4. On February 4, 2019, two weeks after arriving in D.C., and a month after he stopped taking his medication, United States Park Police officers found Mr. Jaselskis sitting at the base of

---

[1] Mr. Jaselskis' psychiatric records from the New Jersey facility have been provided to the Government and the Probation Office.

the Washington Monument. The monument area was under construction at the time, and the officers found Mr. Jaselskis in a restricted area of the monument grounds. When the officers attempted to arrest Mr. Jaselskis, he became belligerent and had to be subdued with pepper spray and a taser gun. The next day, after being charged with unlawful entry and two counts of simple assault in Superior Court, Mr. Jaselskis was released on bond with the condition that he stay away from the Washington Monuments grounds.

Within hours of his release from Superior Court, Park Police officers once again found Mr. Jaselskis in the restricted area at the base of the Washington Monument. He was arrested again – this time without incident, and the next day charged with contempt (for violating the stay away condition of release in the earlier case), unlawful entry and destruction of property (misdemeanor). Mr. Jaselskis was held without bond after the second arrest, and the case was continued until February 13, 2019, for a bond hearing.

While Mr. Jaselskis was awaiting the February 13, 2019, bond hearing, the police determined that Mr. Jaselskis was the then unidentified individual who entered the Comet Ping Pong restaurant on January 23, 2019; set fire to a curtain in the back room of the restaurant; and fled from the restaurant before the police arrived. Mr. Jaselskis was arrested in connection with the Comet Ping Pong fire after the February 13, 2019, bond hearing. He has been in custody ever since.

5. Soon after his arrival at the DC Jail, the medical staff resumed Mr. Jaselskis' mental health treatment. Reaching the same medical conclusion as the staff at the psychiatric facility in New Jersey, the medical staff at the DC Jail diagnosed Mr. Jaselskis with Bipolar Disorder. *PSR* ¶ 52. The psychiatrists at the DC Jail prescribed Lithium and Risperdol to treat Mr. Jaselkis' Bipolar Disorder.

4

6. Mr. Jaselskis has been receiving mental health treatment at the DC Jail for the last fifteen months. According to the D.C. Jail medical staff, Mr. Jaselskis has been compliant with his medication regimen. Since resuming his medication and therapy, Mr. Jaselskis has presented no signs or symptoms of psychosis or mental health distress. *PSR* ⫿ 52.

7. Within days of his arrest and the appointment of undersigned counsel, Mr. Jaselskis informed the Government through counsel of his desire to accept responsibility for his conduct and to plead guilty. Mr. Jaselskis did not file any substantive pre-trial motions. He sought numerous exclusions under the Speedy Trial Act to conduct plea negotiations. Those negotiations included a complete debriefing with the Government, and providing the Government with his cellular phone.

8. Mr. Jaselskis accepted the Government's plea offer in December of 2019. The Court conditionally accepted the plea agreement on December 17, 2019. As will be readily apparent at sentencing in this case, Mr. Jaselskis is deeply remorseful for actions in this case.

9. As discussed in more detail below, Mr. Jaselskis has enrolled in, and successfully completed, numerous Department of Corrections programs during his incarceration. He is also participating in the Georgetown University Prison Scholars program. His professors describe Mr. Jaselskis as a "model" student.[2] Moreover, as the attached letters of support indicate, Mr. Jaselskis has an unusually large support network, both inside the D.C. Jail[3] and in the community.[4]

---

[2] Letters of Support from Mr. Jaselskis' Georgetown professors are attached in Exhibit A.
[3] Letters of Support from Mr. Jaselskis' Deportment of Corrections Instructors and Mentors are attached in Exhibit B.
[4] Letter of Support from individuals in the community are attached in Exhibit C.

The sentence in this case will be the first ever period of incarceration for Mr. Jaselskis. In the past fifteen months, he has demonstrated that he has the motivation and skills to be a successful member of the community upon his release.  An aggregate sentence of 48 months imprisonment not only "complies" with the purposes of 18 U.S.C. §3553(a), but far exceeds the purposes of 18 U.S.C. §3553(a) given the unique facts of this case.

## **DISCUSSION**

In imposing the sentence in this case, the Court must consider all the factors set forth in 18 U.S.C. §3553(a).  *Gall v. United States*, 128 S. Ct. 586 (2007).   Pursuant to 18 U.S.C. §§ 3562 and 3553(a) sentencing courts should consider the need for the sentence imposed to

>    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
>    (B) to afford adequate deterrence to criminal conduct;
>
>    (C) to protect the public from further crimes of the defendant; and
>
>    (D) to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.

Specifically, courts should "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" set forth in Title 18 U.S.C. §3553(a).

Section 3553(a) further directs sentencing courts to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the range of sentences available, the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offenses charged.

Pursuant to 18 U.S.C. § 3661:

No limitation shall be placed on the information concerning the background, character,

and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purposes of imposing an appropriate sentence.

Section 3582 of Title 18 states that

[t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.

Although the Court is still required to consult the Guidelines in determining what sentence to impose pursuant to 18 U.S.C. §3553, the Court may not presume that the resulting guideline sentence is a correct one. Rita v. United States, 127 S. Ct. 2456, 2457. The Court is free to consider whether the guideline sentence itself "fails to properly to reflect §3553(a) considerations" in the case at hand. Rita, 127 S. Ct. at 2465.

**1. <u>Advisory Guideline Range</u>**

The Probation Department, using the 2018 edition of the Sentencing Guidelines Manual, has concluded that the Total Offense Level for **Count One** (assaulting, resisting, or impeding certain officers or employees) in this case is 11 and that Mr. Jaselskis' Criminal History Category is I, resulting in an advisory sentencing range for imprisonment of eight to 14 months. PSR ¶ 77.

Using the voluntary Superior Court of the District of Columbia Guidelines, the Probation Department has concluded that **Count Two** (arson) is in Group Six of the Master Grid and that Mr. Jaselskis has a Criminal History Score of A, resulting in an advisory sentencing range for imprisonment of 18-60 months. A sentence in this range allows for a "term of imprisonment, compliant long split or short split permissible." *PSR* ¶ 79.

Mr. Jaselskis does not dispute the Probation Department's calculation of the guideline ranges for each count in this case.

**2. Imposition of Sentence Pursuant 18 U.S.C. 3553**

As noted above, pursuant to 18 U.S.C. §§ 3562 and 3553(a) sentencing courts should consider the need for the sentence imposed 1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; 2) to afford adequate deterrence to criminal conduct; 3) to protect the public from further crimes of the defendant; and 4) to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.

Section 3553(a) further directs sentencing courts to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the range of sentences available, the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offenses charged. Specifically, courts should "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" set forth above.

**Nature and Circumstances of the Offense**

There is no question that the offenses to which Mr. Jaselskis has pleaded guilty are extremely grave, and but for the actions of the Comet Ping Pong restaurant staff the harm Mr. Jaselskis caused by his conduct could have been far more serious. And if Mr. Jaselskis were unrepentant and unremorseful for his conduct, and not suffering from a mental illness at the time he committed the offenses, a severe sentence might indeed be warranted in this case. That, of course, in not the case here.

**Range of Sentences Available**

Count One of the Information in this case is a Class D Felony and carries a maximum sentence of eight years and recommended guideline imprisonment range of eight to 14 months. *PSR* ₱ 77.

Count Two of the Information in this case is a Class C Felony and carries a maximum sentence of 10 years and a recommended guideline imprisonment range of 18 to 60 months. *PSR* ₱ 79.

The proposed 48 month sentence in the Plea Agreement, therefore, is at the high end of the recommended guideline imprisonment range for these offenses for this first time offender.

**Need to Avoid Unwanted Sentencing Disparities Among Defendants With Similar Records Who Have Been Found Guilty of Similar Conduct**

The only prior case involving conduct somewhat similar to the instant case is *United States v. Edgar Maddison Welch*, 16-CR-232, in which a 48 month sentence of imprisonment was imposed. While the intended harm in *Welch* is somewhat similar to the intended harm in Count Two, Mr. Jaselskis' post arrest conduct and mental health background are markedly different.

As the Government noted in its Memorandum in Aid Sentencing in *United States v. Welch*, Mr. Welch

> "minimized his conduct with misleading suggestions that he never intended to risk other people's lives and that his actions were based on a failure to consider the 'repercussions'. That the defendant's attempt to re-characterize his conduct suggests that he does not fully comprehend his wrongdoing."

*Response to Defendant's Sentencing Memorandum*, Document 29, *United States v. Welch*, 16-CR-232, at p. 2. The Government noted further that Welch did not suffer from a "diagnosed mental illness . . . that would lessen his criminal culpabililty." *Id.* at p. 7.

In contrast to Mr. Welch, Mr. Jaselskis has never tried to minimize the conduct which brings him before the Court for sentencing, and he fully understands the harm he has caused. Moreover, unlike Mr. Welch, at the time he committed the instant offenses Mr. Jaselskis was suffering from a diagnosed mental illness. To be clear, Mr. Jaselskis is not suggesting that he should not be held accountable for his actions. Rather, Mr. Jaselskis submits that the presence of documented mental health issues, coupled with his post arrest conduct, significantly differentiate this case from Mr. Welch's.

**History and Characteristics of Mr. Jaselskis**

Mr. Jaselskis is just 23 years old and has no prior convictions.  As noted earlier, at the time he committed the instant offenses Mr. Jaselskis was in the throes of a mental breakdown -- the depth of which he did not realize or understand. Mr. Jaselskis has now been receiving mental health treatment for fourteen months. He has been compliant with his medication regimen, and since resuming his medication and therapy has presented no signs or symptoms of psychosis or mental health distress. He is committed to maintaining his mental health treatment, and more.

While at the DC Jail, Mr. Jaselskis has earned Certificates in the Department of Corrections' Parenting Support program, Credit Essentials program, Personal and Professional Development program, Public Speaking program, and Financial Literacy Series program. *PSR* ⁋ 60, He has earned a Certificate of Appreciation for his contributions to the Young Men Emerging (YME) Community. *Id*. He has earned Certificates of Completion for the completion of course work and requirements to become a member of the *Inside Scoop* Newspaper staff and Free Minds Book Club. *Id*.[5]

---

[5] Copies of the Certificates Mr. Jaselkis has earned while at the DC Jail are attached in Exhibit D.

In the summer of 2019, Mr. Jaselskis was selected for enrollment in the Prison Scholar Program at Georgetown University, where he is studying Business and Criminal Justice. To date, he has completed two and a half semesters of course work in the Georgetown program. Professor Marc Howard describes Mr. Jaselskis as a "very strong student who is a pleasure to have in class . . . [who] is exactly the kind of person who will be better prepared to succeed when he returns to society" *Letter of Support*, Professor Marc Morje Howard, Department of Government, Georgetown University, attached in Exhibit A (Georgetown University, Prison Scholars Professors, Letters). Professor Michael Ryan notes that Mr. Jaselskis has "the skills, perspective and determination that will make him successful on the outside." *Letter of Support*, Professor Michael G. Ryan, Adjunct Professor, Georgetown University. Professor Ryan further notes that "Ryan leads discussions in class, encourages his classmates and expands our topics in interesting and relevant ways . . . [and] . . . his contributions and ideas have improved the content and quality of the class." *Id*.  Professor Dylan DelliSanti describes Mr. Jaselskis and a "model student" who "shows the sort of curious and inquisitive mind that all professors hope to find in their students." *Letter of Support*, Professor Dylan DelliSanti, Georgetown University, attached in Exhibit A. Professor George Chochos considers it a "privilege" to have had Mr. Jaselskis as one of his students, and notes that Mr. Jaselskis "has a strong desire to make a positive impact and has definitely learned from his period of incarceration. *Letter of Support*, Professor George Chochos, Georgetown University, attached in Exhibit A.

Mr. Jaselskis is also held in high regard by the staff and mentors in the Department of Corrections, who interact with Mr. Jaselskis on a daily basis. Yukia Hugee, who runs the Department of Corrections' Professional Development and Public Speaking Core Essential program, describes Mr. Jaselskis as a "truly stand-out individual who will impress everyone he

meets." *Letter of Support*, Yulia Hugee, Teacher, Department of Corrections, attached in Exhibit B. Shaena M. Fazal, Esq., Chief of Public Policy and Advocacy for Youth Advocate Programs Inc. (YAP), has been so impressed with Mr. Jaselskis that YAP is considering an offer of employment to Mr. Jaselskis upon his release. *Letter of Support*, Shaena M. Fazal, Esq., Chief of Public Policy and Advocacy, Youth Advocate Programs Inc., attached in Exhibit B. Joel Caston, Founding Member of the Young Men Emerging (YME) program, notes that it has been a "privilege" to mentor Mr. Jaselskis and believes that Mr. Jaselskis "will emerge from this experience with the correct perspective to reach the lives of countless people." *Letter of Support*, Joel Caston, Founding Mentor, Young Men Emerging program, attached in Exhibit B.

Finally, those closest to him are now fully aware of Mr. Jaselskis' mental health issues and stand ready to assist and support him. As the Court knows, despite living several hours away from Washington, D.C., members of Mr. Jaselskis' family have been present for every single court hearing in this case. They visit with Mr. Jaselskis at the D.C. Jail as often as they can. And they speak with Mr. Jaselskis at least once a day.

Mr. Jaselskis support network is not limited to just his family and the people he has come in contact with during his incarceration, but also includes life-long friends, as demonstrated in the Letters of Support attached in Exhibit C.

Mr. Jaselskis is deeply remorseful for the harm he has caused. Nothing in his past would have predicted the events of a year ago. Before the onset of his mental illness Mr. Jaselskis was a loving son, trusted friend and a young man with great potential. He is still all of these things. Only now, he has an additional obstacle to overcome. Everything in his past suggests that with the support of his family and friends, Mr. Jaselskis can and will overcome the obstacles that accompany his mental illness.

Unquestionably, the instant case poses an exceedingly difficult decision for the Court. The conduct which brings Mr. Jaselskis before the Court for sentencing is grave. Yet, at the time he committed the instant offenses Mr. Jaselskis was suffering from a mental illness for which he has now resumed treatment. Notwithstanding his mental illness, Mr. Jaselskis continues to accept responsibility for his conduct.

In striking a balance of the factors to be considered under 18 U.S.C. §3553, Mr. Jaselskis submits that an aggregate sentence of 48 months imprisonment, to be followed by the maximum period of supervised release of five years satisfies 18 U.S.C. §3553's dictate that the Court impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes" set forth in 18 U.S.C. §3553.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/

DAVID W. BOS.
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, DC  20004
(202) 208-7500