**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Criminal No. 1:19-cr-00064 (TJK)** |
| **v.** | : | |
| | : | |
| **RYAN JASELSKIS,** | : | |
| **Also known as "RYAN RIMAS"** | : | |
| **Defendant.** | : | |
| | : | |

<u>**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION
TO MODIFY BENCH WARRANT**</u>

The United States of America by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes the Defendant's Motion to Modify Bench Warrant, which seeks to have this Court convert its bench warrant from a "no bond" warrant to a warrant secured by a money bond. ECF No. 51. The government opposes this motion because Defendant Ryan Jaselskis was out of compliance at the time the Court issued its no bond warrant and he was subsequently arrested for, among other things, felony assault on a public safety officer. Because none of the alternatives proposed by the defense will reasonably assure the defendant's appearance in court or the safety of the community, the Court should deny the motion. In support of this opposition, the United States states the following:

**BACKGROUND**

1.    On February 15, 2019, the Defendant was indicted on a single count of Arson, in violation of 18 U.S.C. § 844(i), a crime of violence that carries a ten-year mandatory minimum sentence of incarceration. Indictment at 1, ECF No. 4. Pursuant to a plea agreement entered by the parties on December 17, 2019, the Defendant pleaded guilty to one count of Assaulting a Federal Law Enforcement Officer, in violation of 18 U.S.C. § 111, and one count of Arson, in violation of

D.C. Code § 22-301, a local version of the federal statute that is also a crime of violence and carries a statutory minimum sentence of one year of incarceration. Plea Agreement at 1-2, ECF No. 14. As part of the plea, the parties agreed that a sentence of 48 months incarceration and 36 months supervised release would be appropriate and, pending approval of the Court, should be imposed. *Id*. at 2.

2.      In his Factual Proffer in support of his Plea Agreement, the Defendant acknowledged the two separate incidents that led to his convictions. Statement of Offense, ECF 15. The Defendant acknowledged entering a local restaurant on January 23, 2019, while it was open for business, and then passing at least eight patrons before using lighter fluid to set fire to a large curtain in a back bar area. *Id*. at 1-2. The Defendant left the building as three occupants fought to quell the blaze. *Id*. at 2. Twelve days later, the Defendant fought United States Park Police Officers Oh and Rivera on February 4, 2019, while they tried to remove him from a restricted construction area surrounding the Washington Monument. *Id*. at 3.

3.      Pursuant to the plea agreement, the government agreed to dismiss a case stemming from a third incident (D.C. Superior Court case number 2019 CMD 001758), when the defendant was arrested without incident after he returned to the Washington Monument on February 5, 2019, and broke in, having been released earlier that day under a court order to stay away from the Washington Monument. Government's Memorandum in Support of Pre-Trial Detention at 6, ECF 3.

4.      In advance of sentencing, in support of the agreed upon sentence, the Defendant noted his mental health struggles in the lead up to the offenses. Defendant's Memorandum in Aid of Sentencing at 1-2, ECF 24. Specifically, the Defendant had received mental health diagnoses in

2018 and, while living with his grandparents in New Jersey, had been civilly committed due to those illnesses. *Id*. at 2. "Not realizing the seriousness of his mental illness . . . he stopped taking the [prescribed] medication within days of his discharge." *Id*. at 3. The Defendant's arrests in the District of Columbia occurred over the six weeks that following his decision to stop taking his medication.

5.     On or about April 23, 2020, the Defendant was sentenced to 48 months' incarceration, followed by three years of supervised release. ECF No. 26. The Defendant was released and began his supervised release on August 12, 2022. One of his special conditions was to maintain mental health treatment.

6.     On July 22, 2024, the Defendant sought early termination of his probation, noting his compliance and the fact that he had recently moved to New Jersey. ECF No. 33. In its order denying that request, the Court noted that "the Defendant, whose mental health issues contributed to his offense, left his parents home and the support that provided in the last few months." Minute Order 8/14/2024.

7.     In November 2024, the Defendant self-published a series of books under the name Kaelen Kotus. *See, Kaelen Kotus: About the Author*, Amazon.com (available at www.amazon.com/stores/author/B0DN86PXSB/about) (last accessed 5/5/2025).[1] The books, published November 3, 2024 (*Common Sense: Wisdom & Revelation*), November 4, 2024 (*Modern*

---

[1]     A photo of Ryan Jaselskis is used as the author photo. Additionally, details contained within the book refer to the Defendant. *See, e.g. Common Sense: Wisdom & Revelation*, Preface ("I started a fire inside Comet Pizza and served 4 years in federal prison. At the time of publishing this, I am still on federal probation.") ("I was hit by a pickup truck from behind, going 65 mph while out on a run a day after I wrote the Modern Emancipation Proclamation. It was a hit-and-run. It didn't even knock me over—just severed my arm.")

*Proverbs*), November 15, 2024 (*The Presidential Seal: Memories of Thoughts*), and December 26, 2024 (*Blessings & Curses: Rapture's Dawn*), contain many of the themes that drove the underlying offenses in this case. For example, he references Pizzagate, mind control, and the need to bring secret information in front of the Supreme Court. Kaelen Kotus, *Common Sense: Wisdom & Revelation*, p. 46 (a 63-page chapter entitled "Pizzagate & Satanism Exposed as the Ancient Secret in English"), p. 173 (chapter entitled, "Exposing the Classified Top Secret Agenda of Remote Mind Control and Manipulation: Secrets of Cybernetic Warfare and The Virtual Reality Game of Life"); Kaelen Kotus, *The Presidential Seal* (chapters entitled "The Royal Blood of The President's Secret" and "A legendary Dossier To Be Viewed Before The Supreme Court to Clean House").

8.      Around the same time as the publication of these books, the Defendant began to escalate his contacts with a social media influencer with millions of followers for whom he had developed an attachment. He contacted her numerous times via email and social media. The social media influencer was concerned enough by the Defendant's attentions that she reported securing court orders against the defendant in California and New Jersey. On January 3, 2025, the Defendant arrived at the home of the social media influencer's parents in Massachusetts. Initially, he requested that the social media influencer's father sign a petition to stop the government from mass genocide and killing people around the world. When the father declined, the Defendant asked him where he could find the social media influencer. The father asked the Defendant to leave the property and called police. The influencer, who was not at her parents' home, reported by phone to officers that the individual at her parent's house matched the description of the defendant, who had been stalking her for approximately four years. She also indicated that he had messaged her

approximately two weeks prior, while she was in Arizona, telling her that he was going to come find her.

9.      When the influencer traveled to Massachusetts to be with her parents for the holidays, the Defendant messaged her again and told her that he was coming to Boston to find her. Officers also issued a "Be-on-the-Lookout" for an individual matching the description of the person who had been at the home of the social media influencer's parents: a green sedan with New Jersey plates (possibly Hyundai) and "GOD" bumper stickers, operated by a white male with long blonde hair touching his shoulders and last seen wearing a blue varsity jacket with red collar with religious patches all over it.

10.     Also on January 3, 2025, law enforcement officers became aware of social media posts by the Defendant to the social media influencer stating, "I have legal documents I'll be delivering to Boston area entities later today in ref to your Freedom & Hope of meeting Eternity." Defendant's New Jersey probation officer was alerted to this development and immediately called the Defendant to inquire where he was. The Defendant answered the phone and responded that he was in Massachusetts on his way to Harvard to meet with a lawyer.[2] The probation officer reprimanded the Defendant for leaving New Jersey without permission, in violation of the terms of his probation. The Defendant acknowledged that he had not received permission to leave the District of New Jersey.

11.     According to a letter he later mailed to his probation officer while incarcerated,

---

2       In a letter he would later write to his probation officer, dated January 25, 2025, the Defendant indicated that he had met this lawyer while incarcerated at the D.C. Jail and participating in the Young Men Emerging Program.

dated January 25, 2025,[3] the Defendant was kicked out of his grandparents' home in New Jersey following a confrontation on January 8, 2025.

12.     On January 10, 2025, the Defendant emailed the social media influencer a copy of a "Marriage License" that had been notarized that day in New Jersey, purporting to establish their marriage.   In addition to establishing a marriage, the license noted that the Defendant was "also known publicly as Kaelen Kotus," cited his recently-published books, and stated that the license itself was "Exhibit A, apart of Discovery to guarantee Public Notary, is my Motion to be Tried shortly before the Supreme Court of the United States charging all living U.S. Presidents of Crimes Against Children and Humanity, War Crimes, Genocide, Rape, Torture, Murder, and Human Trafficking."

13.     The following week, the Court was presented with the Defendant's repeated violations of his probation conditions and signed a no bond warrant for his arrest.

14.     During the same week, between January 14 and 17, the Defendant reported that he "filed myself" a series of motions in D.C. District Court "while homeless, sleeping in my car, while in Washington D.C."[4]  See ECF Nos. 36, 37, 38, 39, 40, 41, and 45. These filings, which the court described as "unintelligible narratives that make no request for relief," reference the Defendant's recent marriage, identify his pseudonym as Kaelen de la Kotus, and reiterate many of the issues that motivated his criminal conduct in the instant case. The repetition of the themes, most notably his request "to have a private meeting with the Justices inside the Washington

---

3     The letter also acknowledged that the Defendant's pseudonym is Kaelen Kotus, cited to his four self-published books, and claimed innocence for his Connecticut charges, writing that he intended to pay the fare, got off at the next stop when asked, and was assaulted by the arresting officers.

4  According to the January 25, 2025 letter to his probation officer.

Monument," (ECF 36 at 2) and the fact that the motions had been hand-filed in D.C. District Court, caused the undersigned to contact law enforcement in fear that the Defendant would harm himself and/or others, particularly during the heightened security of inauguration weekend in D.C.

15.     On January 19, 2025, the Defendant boarded an Amtrak train at New York Penn Station headed to Boston, Massachusetts. He was subsequently arrested at the station in Stamford, Connecticut and charged with Larceny in the Sixth Degree, Breach of the Peace in the Second Degree, Interfering with an Officer/Resisting, and Assaulting a Public Safety Member.

16.     Since that date, the Defendant has been in the custody of the State of Connecticut, pending trial on his charges there and undergoing competency restoration. The defendant has now been found competent, granted a $25,000 bond (which is unpaid), and is awaiting a May 25 hearing in his pending matter. He has requested that this Court lift the "no bond" designation on its warrant so that he can pay his Connecticut bond, be released to the custody of his mother with location monitoring, travel to D.C. and speak to his probation officer, and then return to Connecticut for his hearings in the pending matter while the instant matter trails the rearrest. The government respectfully opposes this request.

**ARGUMENT**

17.     The Defendant asks the Court to modify the detention recommendation it attached to a warrant that remains unexecuted and under seal because he was subsequently arrested in Connecticut, charged with additional criminal conduct, and detained. Once the Defendant is released from custody in Connecticut and this warrant is executed, pursuant to Federal Rule of Criminal Procedure 32.1(a)(1), the Defendant will be entitled to an initial appearance. During that hearing, a magistrate judge will review the warrant materials and determine whether to release or

7

detain the Defendant. Notwithstanding this Court's recommendation at the time it issued this warrant in January 2025, at that future hearing the Defendant is entitled to prove, "by clear and convincing evidence that the person will not flee or pose a danger to any other person or to the community." 18 U.S.C. § 3143. The Defendant cannot move to modify the conditions of a bench warrant before it has been executed and, even if there was such a procedure, the Defendant cannot establish that he will appear at a future hearing on this matter or that he will not pose a danger to himself or others. The Court should therefore deny his motion.

18.     The Defendant's repeated probation violations prior to his arrest in Connecticut are sufficient for his probation to be revoked and for him to be detained pending revocation. He admitted to being in Massachusetts without permission. He did not have permission to be in Washington, D.C. where he hand-filed seven motions. He was arrested in Connecticut, where he remains, where he also did not have permission to be. Moreover, the Defendant's behavior while traveling widely outside of the District of New Jersey is also concerning. Even setting aside his pending felony charges in Connecticut, there is no combination of conditions that can assure his presence in court or the safety of the community.

19.     From January 3, 2025 to January 19, 2025, without permission, the Defendant left the District of New Jersey, where he was being supervised, and traveled to Massachusetts, Washington, D.C., and then was arrested in Connecticut, apparently on his way back to Boston. His actions garnered the attention of law enforcement, while causing an individual to seek multiple court orders protecting herself and her family from him. The Defendant has previously been convicted of arson and assaulting law enforcement officers in this case while not receiving appropriate medical care for his diagnosed mental illness. In the lead up to his re-arrest, he

8

repeatedly emphasized in his writing the same concerns that led him to commit the instant offenses. He also had a confrontation with his grandfather, with whom he was living, and was evicted.

20.    The Defendant has not even made an initial appearance on this bench warrant and remains in Connecticut custody. The Defendant has no fixed address. He has no reason to return to New Jersey, where he was being supervised. He has no potential residence in the District of Columbia, where this Court is supervising him. The defense has proposed that the Defendant be placed in the custody of his mother, who lives in Florida, or that he be permitted to enter a recovery program in Georgia. Given the probation challenge he presents, it may be difficult for the Court to accommodate either of those requests with adequate supervision, even if he were to appear voluntarily following release in Connecticut. Additionally, the Defendant has a pending case in Connecticut that must be resolved as well as pending proceedings in the instant case regarding his violations. The government therefore believes the only viable option is for the Court's no bond detainer to remain in place as that is the only way to assure his appearance in court and the safety of the community.

**CONCLUSION**

21.    Accordingly, the United States submits that the Defendant's no bond warrant should remain in place.

WHEREFORE, the United States respectfully requests that the Defendant's motion be denied.

Respectfully submitted,

EDWARD R. MARTIN, JR.
UNITED STATES ATTORNEY
D.C. BAR NO. 481866

*/s/ Andrew Floyd*
ANDREW FLOYD
Assistant United States Attorney
D.C. Bar No. 1023315
601 D Street NW
Washington, D.C. 20530
Email:   andrew.floyd@usdoj.gov
Phone:   202-252-6841

10